# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| LISA ANN BENNETT, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-3091-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Lisa Ann Bennett seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Bennett contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that Bennett was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I. BACKGROUND

Bennett has a high school education and two years of college. AR 219, 357. She was 39 years old at the time of the Commissioner's final decision. AR 38. Bennett alleges that she is disabled due to sudden and uncontrollable seizures. AR 489-96.

Bennett's application, dated October 1, 2010, was denied initially and on reconsideration. She then sought a hearing before an administrative law judge (ALJ). On August 16, 2012, ALJ Thomas Donahue conducted a video hearing, at which Bennett and a vocational expert (VE) testified. AR 25-49. On August 31, 2012, the ALJ issued a

decision denying the claim. AR 15-24. The ALJ found that Bennett had the severe impairment of seizure disorder but (a) found that the impairment did not meet or equal any Listing requirement and (b) made a residual functional capacity (RFC) finding that she could perform a full range of work. AR 12-16. The Appeals Council denied review of the ALJ's ruling on December 14, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Bennett filed a complaint (Doc. No. 3) in this court on February 6, 2015, seeking review of the ALJ's decision. On August 31, 2015, with the consent of the parties (Doc. No. 23), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have now briefed the issues and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the

claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's

residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the

burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since November 1, 2010, the application date.

2. The claimant has the following severe impairments: seizure disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional imitations: she can never climb ladders, ropes, or scaffolds; never work at heights; and she would need a lower stress level job such as a level four with one being the least stressful and ten being the most stressful.

5. The claimant is capable of performing past relevant work as a can inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since November 1, 2010, the date of the application was filed.

AR 15-24.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit Court of Appeals has explained this standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*,

92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Bennett makes the following arguments:

 1. The ALJ failed to properly analyze whether her seizure disorder met the Listings of Impairment.

 2. The ALJ erred by failing to assign controlling weight to the opinions of her treating physician, Jeffrey Britton, M.D.

 3. The ALJ erred in his RFC findings.

 4. The ALJ asked the wrong hypothetical question to the VE.

Doc. No. 14. I will address these arguments in order.

### A. *The Listings*

The Supreme Court has explained the listings as follows:

> The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they

> affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . .
>
> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. . . . A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990) [citations and footnotes omitted]. The purpose of the listings is to streamline the decision process by identifying claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational backgrounds. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Thus, if an impairment meets or equals one of the listings, the claimant is considered disabled regardless of age, education, and work experience. *Kelley*, 133 F.3d at 588.

The claimant has the burden of proving that his or her impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F. 3d 860, 863 (8th Cir. 2011) (citing *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003)); *see also Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Mann v. Colvin*, 1000 F. Supp. 3d 710, 720 (N.D. Iowa 2015) (no need for remand "[i]f it is obvious that the evidence of record cannot possibly support a finding" that the impairment meets or equals a listing)).

Here, the ALJ devoted little analysis at Step Three as to whether either of the two listings for epileptic seizure disorder were met. AR 14-15. The ALJ stated:

> The claimant's impairments were evaluated singly and in combination under section 1.00ff of the Listings. The medical evidence of record does not contain findings supportive of listing level severity and state agency reviewing physicians concluded that the claimant's impairments did not meet or equal any section in the Listing of Impairments.

AR 15. The ALJ then went on to discuss only mental impairments, under Section 12.04, foregoing any analysis of Section 11.02 or Section 11.03, which relate directly to epilepsy. *Id*. This is omission is unusual in light of the ALJ's finding, at Step Two, that Bennett suffered from the severe impairment of seizure disorder. AR 14.

Having carefully reviewed the record, I cannot conclude that it is "obvious" that Bennett's impairment of seizure disorder does not meet or equal Section 11.02 or Section 11.03. *Mann*, 100 F. Supp. 3d at 720. As such, reversal and remand is necessary. On remand, the ALJ shall expressly address Sections 11.02 and Section 11.03 of the listings.

### B. *Treating Physician's Opinion*

#### 1. *Applicable Standards*

The Social Security regulations state, in relevant part:

> ***Treatment relationship***. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of

determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(c)(2) [emphasis added]. This means a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(c)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).

An ALJ's failure to provide good reasons for rejecting a treating medical source opinion concerning the claimant's ability to work is reversible error. *See Reed v. Barnhart*, 399 F.3d 917, 921–22 (8th Cir. 2005) (failing to provide good reasons for rejecting treating source opinions); *see also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

### 2. *Analysis*

The Commissioner does not dispute that Jeffrey Britton, M.D., a neurologist at the Mayo Clinic was one of Bennett's treating physicians. Doc. No. 15 at 6. Bennett was referred to the Mayo Clinic based on an abnormal MRI performed in July 2002. AR 539-42. Subsequently, Bennett's seizure disorder was cared for by Dr. Britton and others at the Mayo Clinic. By the time Dr. Britton provided an RFC assessment for Bennett, he had been treating her for over six years. AR 588-89.

Dr. Britton prepared two opinions in the form of letters. The first, dated September 8, 2010, stated:

> Lisa Bennett is a patient under my care at Mayo Clinic. She has epilepsy and also suffers from depression. She had a break through seizure about two months ago and is unable to drive. The unpredictability of her seizures makes it so that she is not able to work. She has significant problems with depression and anxiety as well which significantly decreases her ability to work in addition. It is my opinion that she is disabled.

AR 873. The second, dated November 19, 2010, generally repeats the first. AR 964. In addition, Dr. Britton prepared an RFC assessment dated June 18, 2012, in which he reported that Bennett's seizures come on without warning such that she is not able to take safety precautions prior to a seizure. AR 1093. He indicated that her typical seizure lasts a few minutes and he predicted that they will occur one or two times during a two-month period. *Id*. Dr. Britton stated that while stress can make the seizures more likely, they occur without provocation. AR 1094. He also stated that Bennett suffers confusion following a seizure. *Id*. He reported that because Bennett's seizures are unpredictable, she is unable to drive, work at heights or operate machinery. *Id*. He also noted that she has a history of injury during seizures. *Id*.

Dr. Britton indicated that Bennett's seizures are likely to disrupt the work of co-workers. AR 1095. He also noted that she will need more supervision because of the likelihood of injury during a seizure. *Id*. While finding that Bennett is capable of a low stress job, Dr. Britton stated that she would miss work about three days per month due to her impairment and/or treatment. AR 1096.

Opposing Dr. Britton's opinions are several determinations by non-examining state agency physicians. On March 17, 2010, Gary Cromer, M.D., indicated that Bennett's only physical functional limitation was a need to avoid hazards. AR 831-38. Bennett reports that Dr. Cromer is a general practice physician. Doc. No. 14 at 10. A case analysis by Chrystalla Daly, D.O., less than a month later affirmed Dr. Cromer's

11

conclusions. AR 856. According to Bennett, Dr. Daly is a pathologist. Doc. No. 14 at 10.

Another physical RFC assessment was conducted in December 2010 by John May, M.D. AR 966-73. Dr. May noted limitations only with regard to hazards and heights. *Id.* Bennett states that Dr. May practices no specialty. Doc. No. 14 at 10. Dr. May's assessment was reviewed and affirmed by Laura Griffith, D.O., on April 21. 2011. AR 1036. According to Bennett, Dr. Griffith's specialty is internal medicine. Doc. No. 14 at 10.

The ALJ afforded "only some weight to Dr. Britton's opinions as his opinions and findings in the questionnaire are internally inconsistent." AR 19. One of the identified, alleged inconsistencies is that Dr. Britton stated Bennett had one to two seizures every two months yet indicated she would miss work three days a month. AR 1093, 1096. This is not a clear inconsistency. Dr. Britton's report of one or two seizures every two months was in response to a question about her then-present situation. AR 1093. His answer as to three absences a month was a future prediction. AR 1096. Moreover, the question that prompted the prediction addressed absences resulting from "the impairments or treatment." *Id.* With regard to this alleged inconsistency, the ALJ compared apples and oranges.

Another alleged inconsistency is that Dr. Britton's June 2012 physical RFC assessment indicated that Bennett could perform low stress jobs, while Dr. Britton had previously reported that she could not work and was disabled. AR 19. Again, this alleged inconsistency is suspect. As noted above, Dr. Britton's prior opinions were in the form of letters he authored in 2010, nearly two years before the June 2012 RFC assessment. AR 873, 964. Given his ongoing treatment relationship with Bennett, it is hardly surprising that his evaluation of her restrictions and abilities may have changed over time. If anything, the fact that his 2012 assessment provided a more-optimistic view of Bennett's

capabilities should weigh in favor of Dr. Britton's objectivity. Yet the ALJ found this alleged inconsistency to be one that "erodes" Dr. Britton's credibility. AR 20.

Ultimately, the ALJ favored the opinions of physicians who did not examine Bennett, and do not practice in neurology, over the opinions of Bennett's long-time treating neurologist. While this does not automatically constitute error, the ALJ's failure to provide good reasons for doing so is reversible error. *Reed*, 399 F.3d at 921–22. I find that the ALJ failed to provide good reasons, supported by substantial evidence in the record, for the weight afforded to Dr. Britton's opinions. As such, reversal and remand is required on this issue, as well. On remand, if the ALJ finds that Bennett's impairment does not meet or equal a listing, then the ALJ shall re-weigh the medical opinions of record and shall provide good reasons for the weight afforded to each. The ALJ shall then determine whether any adjustments to Bennett's RFC are required.

Because I have found that remand is necessary for the ALJ to both (a) expressly address the listings for epileptic seizures and (b) reassess the opinion evidence of record, I need not reach Bennett's other arguments.

## VI. CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Bennett was not disabled is **reversed and remanded** for further proceedings consistent with this order. Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**
**DATED** this 1st day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

13